**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LIBERTY INSURANCE CORPORATION,**

                  **Plaintiff,**

  vs.                                          **3:14-CV-949**
                                                 **(MAD/DEP)**
**ADMIRAL INSURANCE COMPANY,**

                  **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**JAFFE, ASHER LAW FIRM**             **DAVID R. SHYER, ESQ.**
600 Third Avenue                       **MARSHALL T. POTASHNER, ESQ.**
9th Floor
New York, New York 10016
Attorneys for Plaintiff

**COUGHLIN, DUFFY LAW FIRM**      **JUSTIN N. KINNEY, ESQ.**
88 Pine Street
5th Floor
Wall Street Plaza
New York, New York 10005
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On July 29, 2014, Plaintiff Liberty Insurance Corporation ("Liberty") commenced this action pursuant to 28 U.S.C. § 1332(a), alleging that Defendant Admiral Insurance Company ("Admiral") has violated its liability insurance coverage obligations. *See* Dkt. No. 1.

     Currently before the Court is Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment. *See* Dkt. Nos. 14, 16.

### II. BACKGROUND

## A. The Underlying Actions

On or about October 21, 2013, Kevin Harrington ("Harrington") commenced an action entitled *Kevin Harrington v. State University Construction Fund, Christa Construction, LLC, and Schenectady Steel Co. Inc.*, Index No. 244917, in the Supreme Court of the State of New York, County of Rensselaer. Dkt. No. 14-9 at 2; *see also* Dkt. No. 14-16 at 1. Harrington commenced a separate action in the New York Court of Claims, entitled *Kevin Harrington v. The State of New York and State University of New York College at Oneonta*, Claim No. 13-155. Dkt. No. 14-10 at 2; *see also* Dkt. No. 14-16 at 2. Admiral and Liberty seek a declaratory judgment determining whether Liberty has a co-primary duty to defend and indemnify Christa Construction LLC ("Christa"), the State University of New York Construction Fund ("the Fund"), the State of New York ("the State"), and the State University of New York College at Oneonta ("SUNY Oneonta") in Harrington's State Court and Court of Claims actions ("the underlying actions"), by virtue of an endorsement in Liberty's Commercial General Liability ("CGL") policy. *See* Dkt. No. 10 at 2; *see also* Dkt. No. 14-3 at 6-7.

## B. The Contracts

In an agreement dated November 8, 2011, the Fund hired Christa as the general contractor for the rehabilitation of Fitzelle Hall, a building at SUNY Oneonta ("the project"). Dkt. No. 16-14 at 2. On August 10, 2012, Christa hired Schenectady Steel Co. Inc. ("Schenectady") as a subcontractor on the project pursuant to a written agreement (the "Schenectady Contract"). Dkt. No. 16-17 at 2. In turn, Schenectady hired Capital Construction Management Services LLC ("Capital") as a sub-subcontractor on the project (the "Capital Subcontract"). Dkt. No. 16-16 at 2. Schenectady obtained CGL insurance coverage from Liberty, and Capital obtained CGL insurance coverage from Admiral. *See* Dkt. Nos. 14-2, 14-8.

### 1. *The Capital Subcontract*

The Capital Subcontract contains the following provision:

> **ARTICLE 13     INSURANCE AND BONDS**
> **§ 13.1** The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability as will protect the Subcontractor from claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract:
>
> **Type of insurance**
> Submit insurance prior to commencement of work at job site. Insurance shall be in accordance with Requirements of the Prime Contract and Have the following Wording:
>
> **SSCI Job # K1203-Christa Job#2011-27 - Contract #2011127-010** - Schenectady Steel Co. Inc., Christa Construction, State University Construction Fund (SUCF), The State of New York, The State University of New York, their trustees, officers agents or employees, Lomanaco & Pitts Architects are to be named additional insureds. This insurance shall apply as primary insurance, on a noncontributory basis before any other insurance or self insurance, including any deductible maintained by or provided to, the additional insureds. Waiver of Subrogation is required. There shall be no labor law exclusion.

Dkt. No. 16-16 at 14-15.

### 2. *Admiral's Policy*

Admiral issued Capital a CGL policy, No. CA000017326-01, with a policy period from January 10, 2013 to January 10, 2014 ("the Admiral Policy"). *See* Dkt. No. 14-8 at 3-4. The Admiral Policy contains the following provision:

> **4.     Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a.     Primary Insurance**

> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
>
> **b.** Excess Insurance
>
> (1) This insurance is excess over:
>
> . . . .
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

*Id.* at 18. The Admiral Policy also contains a "PRIMARY/NON-CONTRIBUTING INSURANCE ENDORSEMENT[,]" which is set out below:

> This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **Schedule**
>
> Any person or organization qualifying as an insured under an Additional Insured-Owners, Lessees or Contractor's endorsement - Scheduled Person or Organization CG2010 0704 attached to this policy, or Additional Insured-Owners, Lessees or Contractors endorsement - Completed Operations CG2037 0704, attached to this policy.
>
> It is agreed that Commercial General Liability Coverage Form CG 00 01 Section IV paragraphs 4.b. and 4.c. do not apply with respect to other valid and collectible Commercial General Liability insurance, whether primary or excess, available to the person or organization shown in the Schedule and:
> 1) Who is an insured under an Additional Insured-Owners, Lessees or Contractors endorsement attached to this policy; and
> 2) Who requires by specific written contract that this insurance is to be primary and/or non-contributory to other valid and collectible insurance available to that person or organization.

4

> This endorsement does not change the scope of coverage provided to the person or organization by any Additional Insured endorsement.
>
> All other terms and conditions remain unchanged.

*Id.* at 38.

In a January 16, 2014 letter, Admiral acknowledged its duty to defend Christa, the Fund, the State, and SUNY Oneonta in the underlying actions:

> Based on the allegations of the Complaint, the Fund, Schenectady and Christa potentially qualify as insureds under the Admiral Policy by virtue of the Additional Insured Endorsement recited [below]. Based on the allegations of the Claim, the State and SUNY Oneonta potentially qualify as insureds under the Admiral Policy by virtue of that endorsement. Admiral therefore agrees to defendant the Fund, Schenectady and Christa in the State Court Action, and agrees to defend the State and SUNY Oneonta in the Court of Claims Action, from the respective dates of tender of the Complaint and Claim, subject to the terms, conditions and limits of the Admiral Policy.

Dkt. No. 14-12 at 6. The additional insured endorsement referenced by Admiral in the January 16, 2014 letter includes the following relevant provision:

> **A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
> **1.** Your acts or omissions; or
> **2.** The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured(s) . . . .

Dkt. No. 14-8 at 23. The schedule in the additional insured endorsement provides that:

> ANY PERSON OR ORGANIZATION THAT IS AN OWNER OF REAL PROPERTY OR PERSONAL PROPERTY ON WHICH YOU ARE PERFORMING ONGOING OPERATIONS, OR A CONTRACTOR ON WHOSE BEHALF YOU ARE PERFORMING ONGOING OPERATIONS, BUT ONLY IF COVERAGE AS AN ADDITIONAL INSURED IS REQUIRED

5

> BY A WRITTEN CONTRACT OR WRITTEN AGREEMENT
> THAT IS AN "INSURED CONTRACT", AND PROVIDED THAT
> THE "BODILY INJURY", "PROPERTY DAMAGE" OR
> "PERSONAL & ADVERTISING INJURY" FIRST OCCURS
> SUBSEQUENT TO THE EXECUTION OF THE CONTRACT OR
> AGREEMENT.

*Id.*

### 3. *Liberty's Policy*

Liberty issued a CGL policy to Schenectady, effective from January 1, 2013 to January 1, 2014 ("the Liberty Policy"). Dkt. No. 14-2 at 3. Attached to the Liberty Policy is an endorsement entitled "LIBERTY DirectSolutions for Fabricated Metals Manufacturers" ("the Liberty Endorsement"), which includes this item:

> **Item 11. EXPANDED BLANKET ADDITIONAL INSURED AND WAIVER OF SUBROGATION (FOR INSTALLATION EXPOSURES)**
>
> **A.** **Section II** - **Who Is An Insured** is amended to include as an insured any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, provided that:
>
> . . . .
>
> That person or organization shall be referred to as the additional insured.
>
> . . . .
>
> **D.** **Other Insurance**
>
> The insurance provided by this endorsement applies only to coverages and limits of insurance required by written agreement, but in no event exceeds either the scope of coverage or the limits of insurance available within this policy.
>
> This insurance shall be excess over any other insurance available to the additional insured, whether such insurance

is on an excess, contingent or primary basis, unless the written agreement with you requires that the insurance provided for the additional insured be primary concurrent or primary non-contributory, in comparison to the additional insured's own policy or policies.

To the extent that the additional insured has the right to pursue any other insurance carrier for coverage, including a defense, we shall share that right with the additional insured.

Dkt. No. 14-3 at 6-7.

*4. The Schenectady Contract (Insurance Exhibit C)*

The Schenectady Contract included the following exhibit:

**INSURANCE EXHIBIT C**

. . . .

3. **COMMERCIAL GENERAL LIABILITY INSURANCE (1993 Insurance Services Office, Inc. (ISO) CG 00 01 or its equivalent)**

**3.1** Subcontractors and sub-subcontractors shall provide, at their own expense, Commercial General Liability Insurance on an "occurrence basis", including insurance for premises, operations, independent contractors, products-completed operations, and contractual liability. . . .

**3.2** The policy required by Paragraph 3.1 shall be endorsed to name the following persons or entities as additional insureds:
- Christa Construction, LLC,
- State University College at Oneonta
- State University Construction Fund
- State University of New York . . . .

Subcontractor shall utilize additional insured endorsement form CG 2010 (Form B) - Additional Insured - Owners, Lessees or Contractors, or its equivalent and will show evidence of endorsement on the face of the certificate of insurance.

Coverage for additional insureds shall apply on a primary and non-contributing basis before any other insurance or self insurance,

7

>     including any deductable maintained or provided by the additional
>     insureds.
>
> . . . .
>
> **6. Miscellaneous**
>
> . . . .
>
> **6.4** All insurance policies provided pursuant to this Exhibit shall
> be primary and non-contributing with, and not in excess of,
> any other insurance available to Christa Construction, LLC
> or any of the other persons or entities identified in paragraph
> 3.2 above.

Dkt. No. 16-17 at 22.

## C.     The Current Dispute

Admiral's counsel summarized the issue before the Court as follows:

> There is no dispute that the underlying suits allege claims for which
> Admiral and Liberty owe a duty to defend Schenectady, Christa, the
> Fund, the State, and SUNY-Oneonta.  There is also no dispute that
> Admiral's coverage for Schenectady for the underlying suits is
> primary to Liberty's coverage for Schenectady.  The key dispute
> herein concerns the priority of coverage between Liberty and
> Admiral for Christa, the Fund, the State, and SUNY-Oneonta.  The
> issue is whether one carrier owes the sole primary duty to defend or
> both carriers owe a co-primary duty to defend these four entities.

Dkt. No. 10 at 2; *see also* Dkt. No. 14-16 at 8.

## III. DISCUSSION

## A.     Standard of review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at

8

36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Analysis**

As set out in Admiral's letter, the only issue before the Court is whether Liberty has a co-primary duty to defend Christa, the Fund, the State, and SUNY Oneonta in the underlying actions. *See* Dkt. No. 10 at 2.

> Under New York law, "an insurance policy which . . . contemplates
> contribution with other . . . policies or does not by the language
> used negate that possibility must contribute ratably with a similar
> policy, but must be exhausted before a policy which . . . manifests
> that it is intended to be excess over other excess policies."

*Chichkina v. Cohen*, 172 F.3d 37, 1998 WL 961131, *1 (2d Cir. 1998) (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 375-76 (1985)); *see also Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 46 F. Supp. 3d 398, 429 (S.D.N.Y. 2014); *Liberty Mut. Ins. Co. v.*

*Hartford Ins. Co. of Midwest*, 25 A.D.3d. 658, 662 (2nd Dep't 2006) (citing cases).  However, "the 'general rule of ratable contribution is inapplicable . . . if it "would effectively deny and clearly distort the plain meaning of the terms of the policies."'"  *Endurance Am. Specialty Ins. Co.*, 46 F. Supp. 3d at 426 (citations omitted).  "The purpose of this exception to the general rule, referred to as the '*Lumbermens* exception,' is to preserve all parties' bargained-for contractual expectations."  *Id.* at 427 (citing *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 655 (1980)).  New York courts "construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect."  *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005) (internal quotation marks and citation omitted).

  Here, Item 11 in the Liberty Endorsement ("Item 11") includes an other insurance provision that states that the Liberty Policy:

> shall be excess over any other insurance available to the additional
> insured, whether such insurance is on an excess, contingent or
> primary basis, *unless the written agreement with you* requires that
> the insurance provided for the additional insured be primary
> concurrent or primary non-contributory, in comparison to the
> additional insured's own policy or policies.

Dkt. No. 14-3 at 7 (emphasis added).  This provision thus provides that the Liberty Policy is excess as to the additional insureds unless an exception is triggered by a written agreement as described.  David Rossie, a senior underwriter for Liberty, declared in an affidavit submitted with Liberty's summary judgment motion that "[t]he Liberty Policy defines the term 'you' as 'the Named Insured set forth in the Declarations and any other entity qualifying as a Named Insured.'  This refers only to Schenectady, but not any additional insureds."  Dkt. No. 14-1 at 2.  Item 11 begins by referencing "a written agreement to procure additional insured coverage," and subsequently refers to "the written agreement[.]"  Dkt. No. 14-3 at 6-7.  Accordingly, the

language "the written agreement with you" in the Liberty Policy refers to a written agreement by Schenectady to procure additional insurance coverage. *Id.* The Schenectady contract, where Schenectady agreed to obtain coverage for Christa, the Fund, the State, and SUNY Oneonta as additional insureds, triggered the exception in the other insurance provision of Item 11, because Exhibit C of the Schenectady contract specifies that Schenectady's coverage for the additional insureds will be on a primary and non-contributing basis. Dkt. No. 16-17 at 22.

However, Liberty asserts that the phrase "in comparison to the additional insured's own policy or policies" ("the 'in comparison' clause"), means that when the exception is triggered, the Liberty Policy would only be primary to the additional insureds' own policies. Dkt. No. 14-15 at 11. Liberty defines "own policies" as policies where the additional insureds under the Liberty Policy are named insureds. *Id.* Under Liberty's interpretation, Liberty could be a primary insurer as to "the Fund's, C[h]rista's, the State's, or SUNY's own policies[,]" but not as to Capital's policy with Admiral, where Christa, the Fund, the State, and SUNY Oneonta are all additional insureds. Dkt. No. 14-8 at 3; Dkt. No. 14-3 at 6.

Admiral argues that the "in comparison" clause is "part of the description of what Schenectady's contract must require, not the policies to which the Liberty Policy would be excess." Dkt. No. 16-2 at 20. Further, Admiral contends that "[s]o long as those circumstances negating the excess other insurance language exist, the Liberty Policy is primary . . . regardless of the nature of the other policy(ies) involved." Dkt. No. 23 at 8.

"'In determining a dispute over insurance coverage, we first look to the language of the policy. We construe the policy in a way that afford a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.'" *Raymond Corp.*, 5 N.Y.3d at 162 (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98

N.Y.2d 208, 221-22 (2002)).  The Court finds that Admiral's interpretation of the Item 11 other insurance provision would render the "in comparison" clause superfluous, because Liberty would have a primary duty to defend and indemnify in any instance where a written agreement required that the policy holder's insurance would be primary non-contributory as to the additional insureds' own policy.  If Liberty's policy was primary as to all policies available to the additional insured when the exception applied, then the "in comparison" clause would serve no purpose.  Accordingly, Admiral's interpretation does not afford effect to each clause within Item 11, and is therefore not a reasonable interpretation.

On the other hand, Liberty's interpretation does not disregard or "fail[] to give effect to that portion of the Liberty Policy Other Insurance provision stating 'unless the written agreement with you requires that the insurance provided for the additional insured[s] be primary concurrent or primary non-contributory" ("the 'unless' clause"), as Admiral argues.  Dkt. No. 23 at 8.  If the Liberty Policy additional insureds were named insureds under the Admiral Policy, Liberty would be a co-primary insurer with Admiral, and the "unless" clause would give Liberty a duty to defend and indemnify the named insured.  However, as Christa, the Fund, the State, and SUNY Oneonta are all additional insureds on the Admiral Policy, the "in comparison" clause functions as a limitation on the "unless" clause, leaving Liberty as the excess insurer, and Admiral as the sole primary insurer.[1]

---

[1] The Court does not therefore find the "in comparison" clause ambiguous.  However, even if it were ambiguous, "the rule [that] requires . . . an ambiguous policy to be construed against the insurer" is not applicable, because "New York courts have specifically stated that the rule 'is not applicable in a contest between two insurance companies.'"  *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 573 (2d. Cir. 1992) (quoting *Loblaw, Inc. v. Employers' Liability Assurance Corp.*, 85 A.D.2d 880, 881 (4th Dep't 1981), *aff'd*, 57 N.Y.2d 872 (1982)).

Additionally, this interpretation best serves the intent of the Admiral and Liberty Policies. *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("When a dispute arises involving the terms of an insurance contract, New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'") (citations omitted). Admiral's "PRIMARY/NON-CONTRIBUTING INSURANCE ENDORSEMENT" is evidence of Admiral's intent to provide the sole primary insurance coverage for Christa, the Fund, the State, and SUNY Oneonta as additional insureds. *See* Dkt. No. 14-8 at 38. In contrast, the Liberty Endorsement evidences Liberty and Schenectady's intent that Liberty be an excess insurer as to the additional insureds, except in comparison to their own policies. *See* Dkt. No. 14-3 at 7. Further, the Capital Subcontract shows Schenectady's and Capital's intent to make Admiral's policy primary "on a noncontributory basis before any other insurance." Dkt. No. 16-16 at 15. If the Court declared Admiral and Liberty co-primary insurers for these additional insureds, it would negate the "bargained-for contractual expectation[]" that the endorsements signified. *Endurance Am. Specialty Ins. Co.*, 46 F. Supp. 3d at 427.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties's submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for partial summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Admiral's policy applies on a primary basis as compared to Liberty's policy for the defendants State University Construction Fund, Christa Construction, LLC, and Schenectady Steel Co. Inc. in the actions entitled *Kevin Harrington v. State University Construction Fund, Christa Construction, LLC, and Schenectady Steel Co. Inc.*, Index No. 244917/13, pending in the Supreme Court of the State of New York, County of Rensselaer, and respondents The State of New York and State University of New York College at Oneonta in the action entitled *Kevin Harrington v. The State of New York and State University of New York College at Oneonta*, Claim No. 13-155, in the State of New York Court of Claims; and the Court further

**ORDERS** that Defendant's Counterclaim is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 17, 2015
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge