**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LIBERTY INSURANCE CORPORATION,**

                              **Plaintiff,**

    vs.                                        **3:14-cv-00949
(MAD/DEP)**

**ADMIRAL INSURANCE COMPANY,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**JAFFE, ASHER LAW FIRM**          **DAVID R. SHYER, ESQ.**
600 Third Avenue, 9th Floor        **MARSHALL T. POTASHNER, ESQ.**
New York, New York 10016
Attorneys for Plaintiff

**KINNEY LISOVICZ REILY & WOLFF PC**    **JUSTIN N. KINNEY, ESQ.**
11 Broadway, Suite 615
New York, New York 10004
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On July 29, 2014, Plaintiff Liberty Insurance Corporation ("Liberty") commenced this action pursuant to 28 U.S.C. § 1332(a), alleging that Defendant Admiral Insurance Company ("Admiral") violated its liability insurance coverage obligations. *See* Dkt. No. 1. On April 17, 2015, this Court granted Liberty's motion for partial summary judgment and denied Admiral's motion for summary judgment (the "April 17 Order"). *See* Dkt. No. 26. Currently before the Court is Liberty's motion to enforce judgment and/or to hold Admiral in contempt. *See* Dkt. No. 34.

## II. BACKGROUND

In the April 17 Order, the Court addressed Liberty's motion for partial summary judgment seeking to dismiss Admiral's counterclaim and to "determin[e] and declar[e] that Admiral's coverage applies on a primary basis as compared to Liberty's coverage" for certain defendants in actions entitled *Kevin Harrington v. State University Construction Fund, Christa Construction, LLC, and Schenectady Steel Co. Inc.*, Index No. 244917/13, pending in the Supreme Court of the State of New York, County of Rensselaer, and for the respondents in the action entitled *Kevin Harrington v. The State of New York and State University of New York College at Oneonta*, Claim No. 13-155, in the State of New York Court of Claims (collectively the "state court actions"). *See* Dkt. No. 14-15 at 4. The Court ruled in favor of Liberty, finding that Admiral's was the primary policy applicable to the insureds in the state court actions. Dkt. No. 26 at 14.

In the April 17 Order, the Court also addressed Admiral's motion for summary judgment on its counterclaim seeking a declaration that Liberty was a co-primary insurance provider to the insureds in the state court actions "such that any defense obligation for them must be shared equally." Dkt. No. 6 at 11. The Court ruled against Admiral on this ground, dismissing the counterclaim and finding that its policy was the sole primary policy for the insureds in the state court actions. *See* Dkt. No. 26 at 13-14.

In a June 11, 2015 email, Liberty advised Admiral that it had incurred total expenses of $22,959.86 in defending the state court actions and requested payment for this cost pursuant to the April 17 Order. *See* Dkt. No. 34-3 at 2. This email included copies of invoices detailing the amount of time spent on the State Supreme Court action, the Court of Claims action, and other costs and disbursements. *Id.* at 4-43. In a July 23, 2015 email, Liberty provided additional

2

information detailing that it had incurred $22,403.14 in defense costs and disbursements.[1]  *See* Dkt. No. 34-4.  After several failed attempts to settle the issues regarding the total amount that Admiral owed Liberty, *see* Dkt. Nos. 34-5, 34-6, 32, 35-26, Liberty filed the instant motion to enforce judgment on October 14, 2015, *see* Dkt. No. 34.

### III. DISCUSSION

Admiral's opposition to the instant motion "does not dispute that the services for which Liberty seeks reimbursement were reasonable and necessary in the defense" of the insureds in the state court actions or that Liberty is entitled to some reimbursement for those actions.  *See* Dkt. No. 36 at 10.  Rather, Admiral argues that Liberty failed to provide adequate proof of payment for the reimbursement it seeks because it only produced invoices detailing the amount of time spent on the state court actions without proof that those costs had actually been paid by Liberty.  *Id.* Central to Admiral's opposition is its assertion that Liberty's in-house attorneys should only be reimbursed for their time based on their actual individual salaries, rather than by the rates that Liberty attributed to their legal work in its invoices.

**A.     Proof of Payment**

Admiral's policy does not draw any distinction between those costs actually paid, as opposed to any costs incurred, for reimbursing additional insurance companies that provided defense for insureds in a covered action.  *See* Dkt. No. 14-8.  Without a clear requirement in the insurance contract that Admiral will only reimburse for costs actually paid by Liberty, the Court

---

[1] While the Court notes the slight discrepancy between Liberty's initial email to Admiral seeking $22,959.86, *see* Dkt. No. 34-3 at 2, and the $22,403.14 sought in this motion, Admiral does not dispute that the request in this motion represents a fair and accurate cost for defending the underlying state court actions.  *See* Dkt. No. 36 at 10.

finds Admiral's argument on this ground unpersuasive. Significantly, none of the cases Admiral cites in its opposition to the instant motion discuss a distinction between costs incurred and costs paid. *See* Dkt. No. 36 at 9-10. In *National Union Fire Insurance Co. of Pittsburgh, PA v. Turner Construction Co.*, the First Department found that the language of the specific insurance contract prohibited reimbursement of defense costs sought by the insurer. 986 N.Y.S.2d 74, 79 (1st Dep't 2014). That case was decided on the terms of the individual insurance policy despite New Jersey law that "permits reimbursement of costs incurred in defending claims that are later determined not to be covered." *Id.* In *William Floyd School District v. Maxner*, the Second Department did not discuss the issue of recoupment of defense costs at all, let alone a distinction between the costs actually paid and those incurred in the defense of the insured. 892 N.Y.S.2d 115, 117 (2d Dep't 2009). Likewise, in *National Union Fire Insurance Co. of Pittsburgh, Pa. v. State Insurance Fund*, the First Department did not draw any distinction between the costs paid and those incurred in defending a covered claim. 636 N.Y.S.2d 31, 33 (1st Dep't 1995).

The Court recognizes the dearth of precedential decisions that distinguish between reimbursement for those costs incurred and not yet paid, as opposed to only those costs actually paid. However, in one instructive case the New York Supreme Court, Westchester County, considered a similar issue when an insured was required to incur his own attorney's fees in defending an action that was later determined to be covered by his insurance policy. In holding that the insured was not required to first pay the outstanding legal fees before recovering the costs for those services from his insurance provider, the court reasoned:

> If defendant is in fact obligated to pay for the legal expenses involved it must pick up the tab whether plaintiff paid it or not. There is no logical reason to require plaintiff to advance money it is not obligated to pay as a condition to obtaining payment from the party responsible for the obligation in the first place. It suffices that

4

> the obligation has been incurred. It should be met head on by the
> responsible party without being first siphoned through the plaintiff.

*Coplan Realty Corp. v. Great Am. Ins. Co.*, 373 N.Y.S.2d 802, 805 (Sup. Ct. Westchester Cnty. 1975); *cf. Vansteen Marine Supply, Inc. v. Twin City Fire Ins. Co.*, 93 S.W.3d 516, 519 (Tex. 14th Dist. 2002) ("[I]t [i]s not necessary that [an attorney's] fee be paid to enable [an insured] to recover, but when he establishe[s] that he [i]s obligated to pay, and that the fee is reasonable . . . his cause of action accrue[s]" (quotation and citations omitted)). Moreover, New York courts regularly require insurance companies to reimburse an insured for defense costs incurred without discussing whether those costs were actually paid. *See, e.g.*, *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 444 (1956) ("[T]he insured 'may recover the expenses incurred by him in defending [the covered] action'" (quotation omitted)); *Urban Res. Inst., Inc. v. Nationwide Mut. Ins. Co.*, 594 N.Y.S.2d 261, 262 (1st Dep't 1993) (affirming lower court order that insurance company "reimburse plaintiff for any and all legal costs incurred in defending [the covered] action"); *ACP Servs. Corp. v. St. Paul Fire & Mar. Ins. Co.*, 637 N.Y.S.2d 566, 568 (4th Dep't 1996) ("[P]laintiffs are entitled to reimbursement for litigation expenses, including reasonable attorney's fees, incurred in defending the underlying action"); *see also XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*, 874 F. Supp. 2d 263, 282 (S.D.N.Y. 2012) ("[A]n insurer's 'duty to pay arises at the time the insured becomes legally obligated to pay'" (quoting *Fed. Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 42, 792 N.Y.S.2d 397 (1st Dep't 2005))). Moreover, costs incurred by in-house counsel, although not necessarily paid directly by the insurance company, are likewise recoverable. *See Travelers Ins. Co. v. State Ins. Fund*, 155 Misc. 2d 542, 546 (N.Y. Ct. Cl. 1992), *aff'd* 227 A.D.2d 208, 642 N.Y.S.2d 867 (1st Dep't 1996) ("[W]here an insured or an insurer hires or assigns an already hired employee to defend, it has incurred an expense just as surely as if it had hired outside counsel"). Accordingly, the Court finds that Liberty's production of the

invoices for the legal services rendered in defense of the insureds for the state court actions is sufficient to warrant recovery of those costs without submitting additional proof of actual payment.

**B.      Staff Attorney Rates**

Admiral argues that the time that Liberty's staff attorneys spent defending the state court actions should be reimbursed for their actual hourly wage as reflected by their salary, rather than at an hourly wage that would be paid to outside counsel for similar legal services. *See* Dkt. No. 36 at 12-15. Admiral relies on *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York,* 281 F.2d 538 (3d Cir. 1960) and *Zacharias v. Shell Oil Co.*, 627 F. Supp. 31 (E.D.N.Y. 1984) to support this argument. Admiral incorrectly asserts that "[w]hile the *Zacharias* Court appeared to allow reimbursement based on an hourly rate that was not tied to the salary [of the in-house counsel], the manner in which the rate was calculated is not clear from the decision." Dkt. No. 36 at 15. Conversely, the Eastern District specifically held that it was applying the "lodestar" method to in-house counsel by "multiplying the number of compensable hours spent by the successful attorney on the litigation by the reasonable hourly billing rate for the attorney's services." *Zacharias*, 627 F. Supp. at 33-34. Similarly, the *Pittsburgh* court never stated that the reimbursement rate for in-house counsel should be based solely on the attorney's yearly salary. *See* 281 F.2d at 542 (holding that the plaintiff is entitled "to recover for such [in-house] services a reasonable fee").

The Second Circuit has defined the "reasonable hourly rate" standard as the "rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). This analysis focuses on the prevailing rates of attorneys in a given geographic area to determine what a paying client would pay for

6

representation, rather than relying solely on the rate that the attorney may receive from an in-house position. *See Adams v. N.Y. State Educ. Dep't*, 630 F. Supp. 2d 333, 348 (S.D.N.Y. 2009) ("That 'government attorneys receive a fixed salary and do not bill a client for their services,' should not change the analysis of what rate a paying client would be willing to pay, and thus the rate should be the same whether private counsel, non-profit organization counsel or a government attorney performs the work"); *see also Zacharias*, 627 F. Supp. at 34 ("Compensating in-house or salaried employees by using an hourly rate is commonly used by courts in awarding attorneys' fees").

The individual rates charged by Liberty's in-house counsel are reasonable at approximately $150 per hour charged for Sean Tomko and approximately $77 per hour for Shannon Damboise. *See* Dkt. No. 34-3 at 36-43. The average hourly rate billed by Liberty for its 51.5 hours of in-house legal work was $133.6 per hour. *See id.* at 42. This hourly rate is well within the reasonable rate for attorneys in the Northern District. *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 27-28 (N.D.N.Y. 2015). The Court finds that the invoices submitted by Liberty sufficiently establish that it incurred the $22,403.14 in defending the state court actions that it seeks in the instant motion. *See* Dkt. Nos. 34-3, 34-4. Accordingly, Liberty's motion to enforce judgment in the amount of $22,403.14, plus interest at 9% per annum from August 19, 2014 through the date that this decision is filed, is granted. *See* N.Y. C.P.L.R. §§ 5001, 5004; *see also Royal Indem. Co. v. Providence Washington Ins. Co.*, 966 F. Supp. 149, 150 (N.D.N.Y. 1997) ("[A]n action for contribution between two coinsurers 'should be viewed as a type of contract action in which the successful plaintiff is entitled to predecision interest as a matter of right'").

**C.     Contempt**

7

Liberty argues that Admiral should be held in contempt for violating the Court's April 17 Order by failing to pay $22,403.14 prior to Liberty's filing the instant motion. *See* Dkt. No. 34-7 at 7-10. Federal Rule of Civil Procedure 70 provides as follows:

> **(a) Party's Failure to Act; Ordering Another to Act.** If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court. When done, the act has the same effect as if done by the party
> 
> \*\*\*
> 
> **(e) Holding in Contempt.** The court may also hold the disobedient party in contempt.

Fed. R. Civ. P. 70; *see also Dunn v. N.Y. State Dep't of Labor*, 594 F. Supp. 239, 241 (S.D.N.Y. 1984) ("The contempt power of a court may be exercised to enforce compliance with a court order where the order is clear and unambiguous, the proof of noncompliance is clear and convincing, and the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered" (internal quotations omitted)).

Liberty's complaint asserted two claims for relief: the first seeking a declaration that Admiral's coverage applies on a primary basis to two state court actions, and the second for an entry of a money judgment against Admiral in the amount that Liberty incurred in defending the state court actions. *See* Dkt. No. 1 at ¶¶ 43-51. Liberty's motion for partial summary judgment sought the Court to dismiss Admiral's counterclaim and "determin[e] and declar[e] that Liberty's coverage applies on a primary basis as compared to Admiral's coverage" for the state court actions. *See* Dkt. No. 14-15 at 4. Liberty's motion did not address its second claim for relief seeking entry of a money judgment. Likewise, Admiral's counterclaim only dealt with the issue of whether Liberty was a co-primary insurer and did not address Liberty's request for a money judgment. *See* Dkt. No. 6 at 10-11. Additionally, Admiral submitted a letter to the Court on

8

October 14, 2014 discussing the upcoming motions for summary judgment, stating that "Liberty and Admiral have conferred and believe that the issues in this case will be significantly narrowed and may be fully resolved by cross-motions for summary judgment as to *Liberty's First Claim and Admiral's Counterclaim*." *See* Dkt. No. 10 at 2 (emphasis added).

The Court's April 17 Order granted Liberty's motion for partial summary judgment, holding that "Admiral's policy applies on a primary basis as compared to Liberty's policy for the defendants [in the state court actions]" and dismissing Admiral's counterclaim. Dkt. No. 26 at 14. The April 17 Order did not discuss or grant judgment on Liberty's second claim for relief seeking entry of a money judgment. Accordingly, prior to the instant decision, Admiral has not been ordered to pay Liberty any amount for a money judgment, such that Admiral's failure to pay prior to the instant motion cannot be considered a refusal to comply with the Court's order. Thus, Liberty's motion to hold Admiral in contempt and for sanctions in the form of attorney's fees is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Liberty's motion (Dkt. No. 34) is **GRANTED in part** and **DENIED in part** as set forth herein; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in Liberty's favor in the amount of **$22,403.14, plus interest at 9% per annum** from August 19, 2014 through the date that this Memorandum-Decision and Order is filed, and close this case; and the Court further

9

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 7, 2016
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge